UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LADY DI FISHING TEAM, LLC,

                        Plaintiff,

v.                                  Case No.  3:07-cv-402-J-33TEM

BRUNSWICK CORPORATION,

                        Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to Defendant Brunswick Corporation's Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint and Motion to Strike Claims of Incidental and Consequential Damages (Doc. # 12) filed on July 11, 2007. Plaintiff filed a Response in Opposition to Defendant's motion (Doc. # 16) on July 25, 2007.  For the reasons that follow, this Court denies Defendant's motion to dismiss.

## I.  Plaintiff's Complaint

Plaintiff's complaint contains four counts against Brunswick Corporation (also referred to herein as "Hatteras").[1] Plaintiff's complaint is predicated upon the following factual allegations, which this Court accepts as true for the purpose of deciding the pending motion to dismiss.

---

[1] Plaintiff uses the terms "Brunswick Corporation" and "Hatteras" interchangeably.  Defendant's answer explains that "Hatteras Yachts is a division of Brunswick." (Doc. # 13 at 1).

Plaintiff is a Delaware Limited Liability Company formed in 2002, by Florida residents for the purpose of owning a fishing and pleasure yacht in Florida for personal and family use. (Doc. # 1 at ¶ 1). Defendant manufactures, markets, and sells Hatteras Yachts. (Doc. # 1 at ¶ 2-3). On or about April 6, 2005, Plaintiff entered into a purchase and sale agreement with MarineMax Motor Yachts to purchase a yacht manufactured by Brunswick. As stated in Plaintiff's complaint, MarineMax "was Brunswick's representative in the State of Florida." (Doc. # 1 at ¶ 4). Thereafter, on September 15, 2006, Plaintiff entered into a second purchase agreement with MarineMax. (Doc. # 1 at ¶ 4). The yacht to be purchased was a "64 foot Hatteras Convertible 2007" to be named Lady Di. (Doc. # 1 at ¶ 4).

Plaintiff dealt directly with Hatteras in the manufacturing process which resulted in the building of the Lady Di. (Doc. # 1 at ¶ 4). During the manufacturing and delivery process, representatives of Plaintiff traveled to New Bern, North Carolina, seven times to meet with Hatteras personnel. (Doc. # 1 at ¶ 5). Plaintiff's first trip to meet with Hatteras personnel occurred in October of 2005, and Plaintiff's last trip occurred in August of 2006. (Doc. # 1 at ¶ 6). In addition, during the manufacturing process, Plaintiff was in direct contact with Hatteras personnel by phone and e-mail and negotiated directly with Hatteras,

particularly with regard to amendments to the 2005 and 2006 purchase agreements for the yacht. (Doc. # 1 at ¶ 6). Hatteras directly furnished Plaintiff with an express limited warranty (the "Limited Warranty") as a part of the purchase of the yacht. (Doc. # 1 at Ex. 3).[2]  The Limited Warranty is not dated.  The Limited

---

[2] The Limited Warranty contains several salient provisions as follows:

Limited One-Year Warranty on Specific Parts: Hatteras will repair or replace, at its sole discretion, any parts which are defective in material or workmanship, which are not covered by either limited warranty referenced above or excluded in What This Limited Warrant Does Not Cover below, and reported within one (1) year from the date of the first retail sale.

Sole Remedy: The remedy of repair or replacement of parts that are found to be defective in factory materials or workmanship covered by this limited warranty shall constitute the owner's sole and exclusive remedy against Hatteras for any claims whatsoever of economic loss resulting from product failure.  In no event shall any repair or replacement under this limited warranty exceed the fair market value of the owner's boat as of the date of the owner's claim.  The terms and conditions contained herein may not be modified, altered, or waived by any action, inaction, or representations, whether oral or in writing, except upon the expressed, written authority of a management level employee of Hatteras.

Other Limitations: Except as set forth herein, there are no other warranties either express or implied provided by Hatteras on this yacht.  All other warranties, express or implied, including implied warranties of fitness and merchantability are expressly excluded. Hatteras further disclaims any liability for economic loss arising from claims of product failure, negligence, defective design, manufacturing defect, failure to warn and/or instruct, lack of seaworthiness, and any other theory of liability not expressly covered under the terms of this limited warranty.  To the extent required by law an implied warranty of merchantability is limited to the duration of the respective express limited warranties stated herein.  To the extent allowed by law neither Hatteras, nor the selling dealer, shall have any responsibility for loss of use of the yacht, loss of time, inconvenience, commercial loss, incidental or consequential damages. . . . Some states do not allow the exclusion or limitation of consequential damages, so the above limitation may not be applicable. (Doc. # 1 at Ex. 3).

Warranty lists thirteen exclusions to the Limited Warranty, including but not limited to "engines, transmissions, controls, propellers, batteries, appliances, other equipment, accessories, or components not manufactured by Hatteras, or which carry their own individual warranties." (Doc. # 1 at Ex. 3).

After the closing, the yacht was moved from the Hatteras boatyard in New Bern to a New Bern marina for final preparation. (Doc. # 1 at ¶ 9). From October 2-4, 2006, Hatteras conducted an orientation program for Plaintiff's representatives. Pursuant to the orientation schedule furnished to Plaintiff's representatives by Hatteras, the subjects covered during the orientation program included, but were not limited to, (1) engine orientation; (2) review of warranty manuals; (3) engine and propulsion system; (4) maintenance; and (5) review of warranty with warranty representative. (Doc. # 1 at Ex. 4). After the Lady Di's captain took delivery of the yacht, Plaintiff encountered numerous technical and structural difficulties with the Lady Di.

Plaintiff's captain, with the help of a CAT engine representative, identified problems with the starboard engine, including fuel leaks, running rough, failing to maintain its load, and emitting black smoke.[3]   Plaintiff replaced fuel pumps and

---

[3] Plaintiff explains that running rough means that the turbo boost and load factor were not the same for the starboard engine when running at the same rpm's. In addition, Plaintiff explains that, when an engine "loses it load" it means that the percentage of the engine's total capacity being utilized would drop while

injectors, reconnected hoses, and ordered other repairs. Plaintiff characterizes the starboard engine as a "lemon" that "will never operate reliably or properly" and that "is unfit and unsafe by any standard." (Doc. # 1 at ¶ 16).

In addition, Plaintiff describe structural design defects resulting in a "wet yacht" caused by water spraying into the cockpit, flybridge, engine room, and salon. (Doc. # 1 at ¶ 17). Plaintiff alleges that the Lady Di is plagued by a "station wagon effect" and "porpoising." (Doc. # 1 at ¶ 11, 17). Plaintiff states, "After 6 months of efforts, all of Hatteras' various theories and corresponding modifications failed to solve the fundamental problem--the Hatteras 64' is a miserably wet boat. The 64' has an incurable design defect that causes water to spray into the cockpit and quickly get everyone and everything wet." Plaintiff delivered the yacht to Hatteras in North Carolina, and it remains in Hatteras' possession at this time. (Doc. # 1 at ¶ 24).

Plaintiff, through counsel, sent correspondence to Hatteras dated March 9, 2007, enumerating the yacht's defects and purporting to reject acceptance of the yacht. (Doc. # 1 at Ex. 6). The letter demanded that Hatteras refund the purchase price and out-of-pocket expenses incurred by Plaintiff since the initial contract to purchase the Hatteras was signed. (Doc. # 1 at ¶ 19). Plaintiff's representatives again traveled to North Carolina to check on the

_____

underway for no apparent reason. (Doc. # 1 at ¶ 16).

status of Hatteras' repairs of the yacht.  After the final trip to North Carolina, Plaintiff sent correspondence dated April 13, 2007 to Defendant again refusing delivery of the yacht, revoking acceptance of the yacht, and invoking all rights under any applicable state and federal laws. (Doc. # 1 at Ex. 10).

Thereafter, Plaintiff filed a complaint against Defendant on May 14, 2007.  Plaintiff asserts the following counts: (I) action for revocation of acceptance and breach of express and implied warranties under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301-2312; (II) revocation of acceptance; (III) breach of implied warranty; and (IV) breach of express warranty.

On July 11, 2007, Defendant filed a motion to dismiss Counts I-III for failure to state a claim and motion to strike Count IV to the extent the complaint seeks damages specifically excluded from the express Limited Warranty.  Plaintiff filed a response in opposition addressing the issues raised by Defendant.

## II. **Standard**

On a motion to dismiss, a district court must accept as true all the allegations in the complaint and construe them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).  A court must favor the plaintiff with all reasonable inferences from the allegations in the complaint.  Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the

facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). The complaint may not be dismissed if the factual allegations, taken as true, suffice to "raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964–65 (2007) (concluding that complaint need not state "detailed factual allegations" but must state sufficient factual allegations to raise right to relief above speculative level). Thus, a complaint may be dismissed only if all the factual allegations, taken as true and construed in the light most favorable to the plaintiff, fail to raise a right to relief above the speculative level.

## III. **<u>Analysis</u>**

Defendant essentially asserts three arguments in its motion to dismiss. First, Defendant argues that the Limited Warranty is an agreement to repair a vessel, and therefore, general federal maritime law applies and preempts the Magnuson-Moss Warranty Act and its accompanying application of state law and attorney's fees provision. Second, Defendant asserts that Counts I-III should be dismissed because Plaintiff has failed to allege privity of contract between Plaintiff and Defendant. Last, Defendant contends that Plaintiff's claims for incidental and consequential damages should be stricken because those damages are excluded under the terms of the Limited Warranty.

A.    **Application of Admiralty Law**

Not every contract case that involves a boat gives rise to admiralty jurisdiction.[4]    The law is clear, however, that a contract for the repairs of an existing vessel gives rise to admiralty jurisdiction, and a contract to construct a new vessel does not give rise to admiralty jurisdiction.    Hatteras of Lauderdale, Inc. v. Gemini Lady, 853 F.2d 848 (11th Cir. 1988). Plaintiff contends that the contract in dispute relates to the creation of the Lady Di, and Defendant asserts that it relates merely to her repairs.  Thus, this Court will determine whether its admiralty jurisdiction is invoked by determining whether Plaintiff's complaint relates to the repair of the Lady Di, or her creation.

Even when the parties, as here, have alleged diversity of citizenship as a basis of subject matter jurisdiction, if admiralty jurisdiction also exists, federal maritime law governs the substantive issues of the case. Hesterly v. Royal Caribbean Cruises Ltd., 06-cv-22862-Gold-Turnoff, 2007 U.S. Dist. LEXIS 69430, at *8

---

[4] See Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 22-23 (2004)("To ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute as we would in a putative maritime tort case. . . . Nor can we simply look to the place of the contract's formation or performance.  Instead, the answer depends on the nature and character of the contract and the true criterion is whether it has reference to maritime service or maritime transactions.") (Internal citations omitted).

(S.D. Fla. Aug. 6, 2007)(citing <u>Jackson v. Carnival Cruise Lines, Inc.</u>, 203 F. Supp. 2d 1367, 1373 (S.D. Fla. 2002)). Accordingly, even though the parties meet the diversity of citizenship standard, if admiralty jurisdiction also exists, Plaintiff's rights will be governed by federal maritime law. Plaintiff seeks attorney's fees and costs under the Magnuson-Moss Act, and Defendant contends that federal maritime law, which does not favor granting attorney's fees,[5] conflicts with the attorney's fees provision of the Magnuson-Moss Act.[6]   This Court has studied the case law

---

[5] Generally, federal maritime common law follows the American Rule, which provides that each side should bear their own attorney's fees regardless of the outcome of the suit. <u>See</u> <u>Stires v. Carnival Corp.</u>, 243 F. Supp. 2d 1313, 1323 (M.D. Fla. 2002)(dismissing a claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) in an admiralty case for failure to sufficiently plead damages, and striking request for punitive damages and attorney's fees); <u>Derossi v. Nat'l Mgmt.</u>, 328 F. Supp. 2d 283, 288-289 (D. Conn. 2004)(finding that admiralty law preempted a claim under the Connecticut Unfair Trade Practices Act because "the damages provisions . . . regarding attorney's fees and punitive damages are not consistent with the standards established in admiralty law."); <u>Garan Inc. v. M/V Aivik</u>, 907 F. Supp. 397, 398-401 (S.D. Fla. 1995)(determining that the Florida offer-of-judgment statute was preempted by admiralty law because it permitted a party to recover attorney's fees).

[6] The Eleventh Circuit has described the salient features of the the Magnuson-Moss statute, including its attorney's fees provision, as follows:

> Section 2310 of Magnuson-Moss provides a statutory cause of action to consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation imposed by the Act or under a written warranty, implied warranty, or service contract." <u>Id.</u> § 2310(d)(1).   Suit may be brought in either state or federal court. <u>Id.</u>   The Act also permits class actions, and in an effort to encourage consumers to pursue claims,

interpreting admiralty jurisdiction in factually similar cases, and determines that admiralty jurisdiction does not exist in this case.

As in the present case, the case of <u>Hatteras of Lauderdale, Inc. v. Gemini Lady</u>, 853 F.2d 848 (11th Cir. 1988) required the court to distinguish between the creation of a ship and the repair of a ship.  In <u>Gemini Lady</u>, a yacht purchaser contracted with a yacht retailer to purchase a customized yacht, to be named the Gemini Lady.  The purchaser, however, declined to carry out the contract when the bill for customization exceeded the purchaser's expectations.  The yacht retailer filed a complaint in admiralty, and the district court dismissed the lawsuit and imposed Federal Rule of Civil Procedure 11 sanctions.  The Eleventh Circuit affirmed the district court in full with a detailed discussion of the circumstances giving rise to admiralty jurisdiction germane to

---

Magnuson-Moss allows prevailing consumer litigants to receive attorney's fees and costs. <u>Id.</u> § 2310(d)(2)(e). Magnuson-Moss does not restrict the ability of consumers to pursue relief under the Uniform Commercial Code or other state law theories, but merely establishes minimum federal standards within its ambit. . . . The Act also places certain impediments in the way of litigation-minded consumers. First, prior to bringing suit for breach of warranty, a consumer must give persons obligated under the warranty a reasonable opportunity to "cure" the failure to comply with the obligations at issue. <u>Id.</u> § 2310(e). Second, in order to bring suit in federal court, the amount in controversy must be at least $50,000, exclusive of interests and costs.

<u>Cunningham v. Fleetwood Homes of Ga.</u>, 253 F.3d 611, 617-618 (11th Cir. 2001).

10

the facts of the present case:

> [T]he law of admiralty is well-settled that a contract
> for the construction of a vessel does not involve the
> subject matter jurisdiction of the federal courts.
> Thames Towboat Co. v. The Francis McDonald, 254 U.S. 242,
> 244 (1920)(holding that work made on a schooner which
> had been launched but not completed to the point where the
> vessel could function as intended is not within admiralty
> jurisdiction.)   Maritime jurisdiction does arise,
> however, when a ship undergoes repairs.
> . . .
> The district court found the case of Dubuque Boat &
> Boiler Co. v. The Oil Screw Commander, 251 F. Supp. 923
> (W.D. Mo. 1966) to be particularly persuasive.   In
> Dubuque, the parties agreed to certain alterations or
> "extras" which were not in the original specifications,
> but were agreed upon by the parties as construction
> progressed.   Such alternations included redesigning the
> entire superstructure of the vessel.   The court found
> that the extras were a part of the original construction
> contract, and therefore the court lacked admiralty
> jurisdiction.
> . . .
>    We agree with the district court that even if the
> alleged oral contract did exist, it was still a part of
> the original sale and/or construction of the vessel.
> American's intent was for this vessel to be customized
> according to its specifications in order that the Gemini
> Lady would meet American's needs.   Until the
> customization was completed American would not be
> satisfied as the Gemini Lady would not be in the
> "condition to function as intended." Thames Towboat, 242
> U.S. at 245. . . . We conclude that all of the work was
> completed as part of the sale and/or construction of a
> new vessel, and therefore it does not invoke the maritime
> jurisdiction of the federal courts.

Gemini Lady, 853 F.2d at 850-851.  The Gemini Lady case also holds

that "until a vessel is completed and launched, it does not become

a ship in the legal sense, and therefore, admiralty jurisdiction

does not exist." Id. at 850 (emphasis added).

Another helpful case is Hyundai Heavy Industries Co., Ltd v. M/V Saibos FDS, 163 F. Supp. 2d 1307 (S.D. Ala. 2001).  In Hyundai Heavy Industries, the court dismissed a lawsuit brought by plaintiff workers who serviced the vessel and provided equipment. The court determined that the dispute involved a contract for the construction of a vessel, rather than repair, and that, accordingly, the case should be heard in state court.  The court correctly stated, "it is not always easy to determine what constitutes repair as opposed to original construction." Id. at 1309 (citing The Jack-O-Lantern, 258 U.S. 96, 99 (1922)).

The vessel in question in Hyundai Heavy Industries was a deep-water pipe-laying vessel, and at the time the contract was entered into, the vessel lacked two vital pieces of equipment that it needed in order to lay pipe: a 200--ton J Tower and a 600--ton crane.  The Hyundai Heavy Industries court provides the following analysis of admiralty jurisdiction:

> The thornier issue is at what point the structure comes into legal existence as a "vessel."  At least since 1919, the Supreme Court has recognized two benchmarks as necessary to bring a vessel into legal existence for purpose of distinguishing construction contracts from repair contracts: The structure does not become a ship, in the legal sense, until it is completed and launched." North Pacific Steamship v. Hall Brothers Marine Railway, 249 U.S. 119, 127 (1919) (Emphasis added).

Hyundai Heavy Industries, 163 F. Supp. 2d at 1311.

The court in Hyundai Heavy Industries also makes the following point: "For admiralty jurisdiction to attach, the contract must be

maritime at the time the contract goes into effect as a binding obligation." (Citing <u>Gemini Lady</u>, 853 F.2d at 850, quoting <u>The Manhattan</u>, 46 F. 797 (D. Wash. 1891)).  The court further determined that "for a contract to work on a vessel to be maritime, the vessel must be launched and completed before the contract becomes a binding obligation." <u>Id.</u>  The court further explained, "If the contract to work on a vessel is entered before the vessel is 'launched' and 'completed,' the mere fact that goods and services are not provided pursuant to the contract until later cannot retroactively bestow maritime status on the contract." 163 F. Supp. 2d at 1314.  As the tower and the crane were needed for pipe-laying, and such equipment was not installed when the contract at issue became binding, the court determined that admiralty jurisdiction did not exist.  In making this determination, the court noted, "in determining whether a vessel is completed for purposes of bestowing admiralty jurisdiction, it is the purchaser's intent, not the supplier's, that matters." <u>Id.</u> at 1313, n. 5.[7]

Consistent with the cases described above, this Court finds

---

[7] Along the same lines, the court in <u>Great American Insurance Co. of New York v. Miller Marine Yacht Services, Inc.</u>, 5:05-cv-175-RS-AK, 2006 U.S. Dist. LEXIS 49989, at *19-20 (N.D. Fla. July 20, 2006) held "even after the vessel is launched, while it is not sufficiently advanced to discharge the functions for which she is designed, the materials, work and labor for her completion are not the subject matter of admiralty jurisdiction.  The contract is treated as one merely preliminary to the use of the ship as an instrument of commerce and navigation." (Citing <u>Benedict on Admiralty</u> § 186).

that the Lady Di was not a completed vessel when the agreement between Plaintiff and Defendant became a binding obligation. Accordingly, this Court's admiralty jurisdiction has not been invoked, and maritime law does not apply.  The crux of this case is the contract for the sale of the vessel, not for repairs to an existing vessel.  Accordingly, consistent with <u>Gemini Lady</u>, 853 F.2d at 851 and <u>Thames Towboat</u>, 242 U.S. at 245, and the other cases discussed above, the undersigned determines that this is not an admiralty case, and the attorney's fees provisions of the Magnuson-Moss Act are not preempted by general federal maritime law.  As such this Court declines to strike Plaintiff's request for attorney's fees at this stage of the action.

   **B.   <u>Privity</u>**

   Defendant asserts that there is no privity of contract between Plaintiff and Defendant and, thus, Counts I-III, all requiring privity of contract as an essential element, should be dismissed. Plaintiff's complaint alleges that Plaintiff purchased the Lady Di from MarineMax, Brunswick's "representative within the state of Florida" and then negotiated the manufacture, purchase and sale agreement, delivery, and subsequent repairs of the yacht with Brunswick. (Doc. # 1 at ¶ 4).

   Florida law controls this Court's evaluation of privity. <u>See Insurance Company of N. America v. American Marine Holdings</u>, 5:04-cv-86-Oc-10GRJ, 2005 U.S. Dist. LEXIS 39707, at n.20 (M.D. Fla.

14

Nov. 28, 2005)("Under Florida law . . . [plaintiff] must prove privity of contract between itself and [defendant] in order to recover under a theory of either breach of express warranty or breach of implied warranty against [defendant].)(citing <u>Kramer v. Piper Aircraft Corp.</u>, 520 So.2d 37 (Fla. 1988)).   This Court agrees that Counts I-III of Plaintiff's complaint would fail absent an allegation of privity between Plaintiff and Defendant.[8] However, a close reading of the complaint and case law demonstrates that Plaintiff's complaint, describing MarineMax as Brunswick's representative combined with Plaintiff's protracted negotiations with Brunswick, sufficiently alleges privity to survive a motion to dismiss.

The cases of <u>Bland v. Freightliner LLC</u>, 206 F. Supp. 2d 1202 (M.D. Fla. 2002) is instructive.   In <u>Bland</u>, the plaintiffs purchased a new motor home from a dealer, and the motor home proved to be defective in many respects. <u>Id.</u> at 1205. The plaintiffs sued Freightliner, the manufacturer of the motor home, rather than the

---

[8] <u>McGraw v. Fleetwood Enters.</u>, 6:07-cv-234, 2007 U.S. Dist. LEXIS 55905, at *6 (M.D. Fla. Aug. 1, 2007)("Defendant is correct that the lack of privity between Fleetwood and Plaintiff precludes his implied warranty claims.  There is some disagreement among the courts as to whether privity is a prerequisite for the assertion of an implied warranty claim, but the law in Florida is that privity is required."); <u>see</u> <u>also</u> <u>Lebel v. Rampage Sport Fishing Yachts</u>, 06-cv-61890, 2007 U.S. Dist. LEXIS 43134, at *3 (S.D. Fla. June 14, 2007)("Defendant correctly notes that, under Florida law, a cause of action for breach of implied warranty of merchantability or fitness for a particular purpose cannot exist in the absence of privity.").

dealer. Id. The plaintiffs alleged that they were in privity with the manufacturer because the dealer was an agent of the manufacturer. Id. at 1207.  In support of their agency argument, the plaintiffs pointed to a number of factual allegations stated in the complaint and attachments thereto, including the fact that the sales contract mentioned Freightliner when waiving liability for failure to deliver the vehicle, "Freightliner" was used almost interchangeably with the dealer in the warranty, and the warranty required the plaintiffs to return the vehicle to an "authorized Freightliner dealer" for repairs. Id.  The court determined that the complaint's privity allegations were sufficient to survive a motion to dismiss. Id.

In making this determination, the court properly considered Florida law, citing Foote v. Green Tree Acceptance, Inc., 597 So.2d 803 (Fla. 1st DCA 1991), a case in which the purchaser bought a motor home from a dealership and then sued the manufacturer of the motor home. Id. at 803-804.  The manufacturer filed a motion for summary judgment, which the trial court granted. Id.  However, because the warranty agreement required the purchaser to contact the manufacturer regarding repairs in the instance that the dealer could not properly repair the vehicle, the appellate court determined that summary judgment in favor of the manufacturer was improper. Id. at 805.  The appellate court determined that the relationship between the purchaser and the manufacturer was a

16

factual issue and that the purchaser should be given an opportunity to establish agency between the manufacturer and the dealer. <u>Id.</u>[9]

Plaintiff has demonstrated privity to the extent necessary to survive a motion to dismiss, and Defendant's motion to dismiss Counts I-III is due to be denied.  In rendering this decision, this Court is not finding that privity of contract exists between Plaintiff and Defendant as this is a factual determination, and it is clear that privity is essential indeed.   In rendering this decision, this Court merely finds that Plaintiff has pleaded privity of contract in the complaint at the lowest threshold.

C. **Incidental and Consequential Damages**

Defendant moves to strike Plaintiff's claims for incidental and consequential damages as stated in Count IV of the complaint for breach of express warranty.  The express warranty contains the following language: "To the extent allowed by law neither Hatteras, nor the selling dealer, shall have any responsibility for loss of use of the yacht, loss of time, inconvenience, commercial loss, incidental or consequential damages." (Doc. # 1 at Ex. 3). Nevertheless, Plaintiff's complaint seeks the award of "all monies paid to Hatteras, MarineMax, and their affiliate entities; the value of items installed or placed on or within the Yacht; monies

---

[9] <u>See</u> <u>also</u> <u>Crabtree v. Donzi Marine, LLC</u>, 3:07-cv-464-J-33MCR, 2007, U.S. Dist. LEXIS 73863, at *5-6 (M.D. Fla. Oct. 3, 2007)(rejecting manufacturer's strained attempt to avoid privity of contract at motion to dismiss stage of case).

expended for out-of-pocket expenses, travel expenses, Captain and crew salary expenses and the like; loss of use of a vessel during the applicable period of time; dockage fees; and interest; attorney's fees and costs." (Doc. # 1 at ¶ 54 (a-h)).  In support of their argument that a manufacturer can exclude incidental and consequential damages from its express warranty, Defendant cites Florida Statute Section 672.719, which states in full:

Florida Statute Section 672.719 (2)-(3) states:

§ 672.719. Contractual modification or limitation of remedy

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages:

(a) The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Plaintiff counters that (1) a manufacturer is not permitted to

disclaim implied warranties of merchantability and fitness; (2) a buyer is entitled to disregard the limitations and exclusions of consequential damages where the exclusive remedy fails of its essential purpose or the exclusion of consequential damages is unconscionable; and (3) sellers do not have an unlimited time for the performance of the obligation to replace and repair parts. Plaintiff's tripartite argument is not entirely supported by Florida law.

Florida has adopted the UCC, and Plaintiff's argument that a manufacturer is not permitted to disclaim implied warranties of merchantability and fitness is incorrect.  See Florida Statute Section 672.316(2) ("to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous; and, to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous.  Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'"); See also Mosanto Agric. v. Edenfield, 426 So. 2d 574, 576 (Fla. 1st DCA 1982)("limitations of implied warranties of merchantability and fitness are now expressly authorized by the UCC if such limitations are made a part of the bargain between the parties, are reasonably consistent with any express warranties made, are in writing and are conspicuous, and

are not unconscionable.")

Plaintiff is correct, however, that an exclusion of consequential and incidental damages may be disregarded if the exclusive remedy fails of its essential purpose or is unconscionable. The official comment to Florida Statute Section 672.719 reinforces the give and take written into the statutory scheme:

> Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect. However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. Similarly, under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article. 2. Subsection (1)(b) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly expressed. 3. Subsection (3) recognizes the validity of clauses limiting or excluding consequential damages but makes it clear that they may not operate in an unconscionable manner. Actually such terms are merely an allocation of unknown or undeterminable risks.

In addition, Plaintiff cites persuasive authority demonstrating that manufacturers do not have an unlimited time to "tinker" with goods subject to a replace or repair warranty. This

Court finds particularly helpful the case of <u>Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.</u>, 258 So. 2d 319, 321 (Fla. 3d DCA 1972), holding with respect to a new Jaguar plagued with defects that:

> After the purchase of an automobile, the same should be put in good running condition; that is the seller does not have an unlimited time for the performance of the obligation to replace and repair parts. The buyer of an automobile is not bound to permit the seller to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty. . . . At some point in time, if major problems continue to plague the automobile, it must become obvious to all people that a particular vehicle simply cannot be repaired or parts replaced so that the same is made free of defect.

Although <u>Orange Motors of Coral Gables, Inc.</u> discussed an automobile, rather than a yacht, this Court finds the <u>Orange Motors</u> court's reasoning applicable to the present situation where Hatteras has attempted to cure the Lady Di's defects for at least six months, and the Lady Di remains in the possession of Hatteras in a condition unfit for Plaintiff's use.

After consideration of the arguments presented, this Court denies without prejudice Defendant's motion to strike Plaintiff's claim for incidental and consequential damages at this early stage of the litigation.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Brunswick Corporation's Motion to Dismiss Counts

I, II, and III of Plaintiff's Complaint and Motion to Strike

Claims of Incidental and Consequential Damages (Doc. # 12) is

**DENIED**.

     **DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this

<u>29th</u> day of October, 2007.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record